**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JACQUELINE ANTUNES, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-01890 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LOWE'S HOME CENTERS, LLC | : | JANUARY 5, 2023 |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 36)**

I.      **INTRODUCTION**

Jacqueline Antunes ("Antunes") brings this action against her former employer,

Lowe's Home Centers, LLC ("Lowe's"), alleging retaliation for reporting sexual

harassment in the workplace in violation of the Connecticut Fair Employment Practices

Act ("CFEPA"), Conn. Gen. Stat. § 46a–60(b)(4), as well as negligent supervision and

negligent retention under state law.

Now before the court is Lowe's Motion for Summary Judgment, see Defendant's

Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 36), which Antunes opposes,

see Plaintiff's Objection to Defendant's Mot. for Summary Judgment ("Pl.'s Obj.") (Doc.

No. 40).  For the reasons discussed below, Lowe's Motion is granted in part and denied

in part.

## II.     BACKGROUND

### A.     Factual Background[1]

Antunes worked as a Merchandising Associate at Lowe's Manchester,

Connecticut location from March 25, 2019, until December 13, 2019.  See Plaintiff's

Local Rule 56(a)2 Statement of Facts ("Pl.'s SOF") ¶ 1–2 (Doc. No. 44-2); Defendant's

Local Rule 56(a)1 Statement of Facts ("Def.'s SOF") ¶ 1 (Doc. No. 37); Defendant's Ex.

2, Antunes Resignation Email (Doc. No. 48-1).  Antunes held the same position

throughout her tenure, though she spent about a month as an acting Merchandizing

Manager.  Pl.'s SOF ¶ 3; Def.'s SOF ¶ 3.  During that month, Antunes hourly wage did

not change nor was she officially promoted.  Pl.'s SOF ¶ 3; Def.'s SOF ¶ 3.

In the summer of 2019, Antunes told a fellow merchandizing associate—an out

gay man—"don't be such a girl."  Pl.'s SOF ¶ 5; Def.'s SOF ¶ 5.  On July 9, 2019,

Antunes was given a final warning from Lowe's in response to the comment.  Pl.'s SOF

¶ 5; Def.'s SOF ¶ 5.  While receiving counseling related to the remark, Antunes told the

store manager, Veejay Chandarpal, that she had been sexually harassed by the

Merchandizing Manager, Kevin Cole.  Pl.'s SOF ¶ 6; Def.'s SOF ¶ 6;[2] Defendant's

Exhibit 1, Deposition of Jacqueline Antunes ("Antunes Dep.") at 21 (Doc. No. 48-1).

Lowe's initiated an internal investigation into Antunes' allegation and terminated Cole "a

---

[1] The court draws primarily from the parties' Local Rule 56(a) statements and supporting exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Antunes, the non-moving party.

[2] The only two material facts that Antunes does not explicitly admit are numbers six and seven in Lowe's Local Rule 56(a)1 Statement.  See Pl.'s SOF ¶¶ 6–7.  Rather than denying these facts, Antunes neglects to write any response at all.  Because these facts are supported by the material found in Lowe's citations to the record, the court deems them admitted.  See D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule. . . .").

couple of weeks" later.  Pl.'s SOF ¶ 7; Def.'s SOF ¶ 7.  Following Cole's termination,

Antunes had no issues with the way that Lowe's addressed her complaint, and she was

not subjected to any additional sexual harassment.  Pl.'s SOF ¶ 8; Def.'s SOF ¶ 8.

However, Jessica Kerpen—a Merchandising District Manager who supervised Antunes'

supervisor—and Anthony Guzman—a Merchandising Area Manager who also

supervised Antunes' supervisor and reported to Kerpen—told Antunes that she was not

a "team player" and was "not one of us" following the complaint against Cole.  Plaintiff's

Exhibit 2, Complainant's Affidavit ("Antunes Aff.") at 3 (Doc. No. 44-5).

Antunes' tenure with Lowe's ended when she left to accept a job as a USPS

driver.  Pl.'s SOF ¶¶ 3, 9; Def.'s SOF ¶¶ 3, 9; Antunes Dep. at 42.  In her resignation

email, Antunes expressed gratitude for all Lowe's offered and taught her.  Pl.'s SOF ¶

10; Def.'s SOF ¶ 10.  In addition, Antunes offered to do anything she could "to help

make [her] transition any easier. . . ."  Pl.'s SOF ¶ 10; Def.'s SOF ¶ 10.

Although Antunes left Lowe's to pursue a "better opportunity", Pl.'s SOF ¶ 9;

Def.'s SOF ¶ 9, she resigned from USPS within a week of starting her new job, Pl.'s

SOF ¶ 12; Def.'s SOF ¶ 12.  A few months later, Antunes applied for multiple positions

at Lowe's.  Pl.'s SOF ¶ 13; Def.'s SOF ¶ 13.  The resumé Antunes submitted with her

application contained several "mistake[s]."  See Pl.'s SOF ¶¶ 14–18; Def.'s SOF ¶¶ 14–

18.  First, the resumé indicated that Antunes was currently employed by USPS, though

she admits that was no longer true by the time she submitted her application.  Pl.'s SOF

¶ 14; Def.'s SOF ¶ 14.  Second, Antunes' resumé suggested she worked at Lowe's as a

Merchandising Manager for the duration of her tenure, though she later testified that this

was not her job title and it was a "mistake" to suggest it was.  Pl.'s SOF ¶ 15; Def.'s

SOF ¶ 15.  Third, Antunes' resumé noted that she "[r]eceived two President's Club awards . . . for outstanding customer service and customer service excellency" during her time at Lowe's.  Pl.'s SOF ¶ 16; Def.'s SOF ¶ 16.  However, "Lowe's does not have or give out" such an award, and Antunes testified that this was a "mistake" as well.  Pl.'s SOF ¶¶ 17–18; Def.'s SOF ¶¶ 17–18.  Instead, Antunes testified that this was an award she received while at Wal-Mart.  Antunes Dep. at 47.

Neither party addresses the following, but Kerpen—who oversaw merchandizing operations in nine stores, including the Manchester location at which Antunes previously worked—reviewed Antunes application for all the Lowe's stores in her district.  Plaintiff's Exhibit 1, Kerpen's Dep. at 15 (Doc. No. 44-4).  Kerpen knew of Antunes' complaint about Cole, Kerpen's Dep. at 27, and decided not to move her application forward in the hiring process by scheduling an interview, see Kerpen's Dep. at 10.  This is contrasted by Antunes' application to Lowe's Worcester, Massachusetts and Danbury, Connecticut locations.  Antunes Aff. at 4.  Neither location is within Kerpen's district, and Antunes' applications there were quickly met with invitations to interview.  Id.  Ultimately, Antunes was not offered a job at the Worcester store.  Id.  Antunes also interviewed with the store manager of Lowe's New Haven location.  Id. at 5.  At the conclusion of the interview, the store manager indicated that he would get in touch with Kerpen about Antunes' application.  Id.  After that, Antunes did not hear back from the New Haven location until her follow up call to the store manager was met with an email relaying that they had selected another candidate.  Id.

B.    Procedural Background

Antunes filed her complaint against Lowe's on November 24, 2020, in the Superior Court for the State of Connecticut.  See Notice of Removal, Defendant's

Exhibit 1 at 5 (Doc. No. 1-1).  Lowe's removed the action to federal court on December 18, 2020.  See Notice of Removal at 1 (Doc. No. 1).  On July 15, 2021, the court granted Lowe's Partial Motion to Dismiss with respect to Counts Two and Five.  See Ruling on Defendant's Motion to Dismiss (Doc. No. 26).

The court now considers Lowe's Motion for Summary Judgment as to the remaining three Counts.  See Def.'s Mot. for Summ. J.; Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 38); Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Reply") (Doc. No. 45).  Antunes opposes the Motion.  See Pl.'s Obj.; Pl.'s Memorandum of Law in Support of Objection to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 44-1).

### III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine

whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.   DISCUSSION

### A.   Count: Retaliation Under CFEPA

In support of their Motion for Summary Judgment, Lowe's argues that Antunes' retaliation claim fails because she cannot establish a prima facie case.  Def.'s Mem. at 6.  Lowe's adds that, even if Antunes could demonstrate a prima facie case, her claim would still fail because Lowe's has legitimate, non-retaliatory reasons for not rehiring her.  Id.  In opposition to the Motion, Antunes counters by arguing that she has laid out a causal connection between her complaint of sexual harassment and Lowe's failure to rehire her—as needed to establish a prima facie case.  Pl.'s Mem. at 12.  Moreover, Antunes posits that Lowe's non-retaliatory reasons are pretextual, and that her complaint about sexual harassment in the workplace was a motivating factor for the decision not to rehire her.  Id. at 13.

CFEPA claims are analyzed under the McDonnell Douglas burden-shifting framework.  Bentley v. AutoZoners, LLC, 935 F.3d 76, 88 (2d Cir. 2010) (citation omitted); Tucker v. Journal Register East, 520 F. Supp. 2d 374, 379 n.1 (D. Conn. 2007) ("Connecticut courts examine federal precedent for guidance in construing Connecticut's anti-discrimination statutes.").  The first step is establishing a prima facie case of relation, which demands that a plaintiff demonstrate "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity

and the adverse employment action." Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013) (citation and quotation omitted). To survive a motion for summary judgment, the plaintiff's burden in establishing a prima facie case "has been characterized as 'minimal and de minimis.'" Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quoting Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). "In determining whether this initial burden is satisfied in a [CFEPA] retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Id.

If a plaintiff meets the "minimal" burden at the prima facie stage, a "presumption of retaliation arises." Id. The second step shifts the burden to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. If the defendant can provide such proof, the "presumption of retaliation . . . drops from the case", and step three requires that the plaintiff have sufficient evidence upon which a reasonable juror could find that defendant's "proffered reason was merely a pretext for an unlawful motive." Bentley, 935 F.3d at 89 (citation and quotation omitted).

1.   Establishing a Prima Facie Case

Lowe's argues that Antunes retaliation claim fails at the first step of the McDonnell Douglas framework. Def.'s Mem. at 7. While Lowe's does not contest that Antunes has fulfilled the first three prongs of establishing a prima facie case, they posit that she has not demonstrated a causal connection between Antunes' complaint of sexual harassment and Lowe's decision not to rehire her. Id. In opposing the Motion, Antunes argues that there is ample evidence in the record from which a rational factfinder could infer a retaliatory motive for the rehiring decision. See Pl.'s Mem. at 12.

7

"A causal connection of retaliation can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant.'" Gale v. City of Bridgeport, 2021 WL 4477388, at *10 (D. Conn. Sept. 30, 2021) (quoting Wallen v. Teknavo Grp., 2019 WL 1435879, at *21 (E.D.N.Y. Mar. 30, 2019); Brauer v. MXD Grp, Inc., 2019 WL 4192181, at *6 (D. Conn. Sept. 4, 2019).

In this case, the issue of causal connection turns on the sufficiency of the circumstantial evidence.  It is undisputed that Antunes did not endure any sexual harassment at Lowe's following Cole's termination, that she has no complaints about how Lowe's handled her complaint about Cole, and that she voluntarily resigned.  See Pl.'s SOF ¶¶ 8–9; Def.'s SOF ¶¶ 8–9.  However, that is not the end of the inquiry.  The record includes circumstantial evidence that retaliatory animus influenced the rehiring process.

According to Kerpen, the hiring process at Lowe's begins with talent acquisition associates, who filter applicants and put forward qualified candidates for review. Kerpen Dep. at 10.  Following that initial sorting, Kerpen is responsible for going over applications for positions in merchandising at the stores she oversees, as well as conducting interviews and making final hiring decisions.  Id.  Antunes' application was directed to Kerpen, who made the decision not to advance Antunes in the hiring process at any of the nine stores she oversees.  Id. at 8, 10, 13–15.  Furthermore, Kerpen knew of Antunes from her prior stint at Lowe's, including that Antunes had filed a complaint

against Cole for sexual harassment.  Id. at 15, 27.  In fact, in Antunes' Affidavit for the Connecticut Commission on Human Rights and Opportunities, she asserts that Kerpen responded to the sexual harassment complaint by telling Antunes she was not a "team player" and was "not one of us."  Antunes Aff. at 3.

That Kerpen—a person with knowledge of and a negative response to the harassment complaint—made the decision not to interview or rehire Antunes can also be contrasted with the response of other Lowe's personnel charged with hiring.  In addition to the stores within Kerpen's district, Antunes submitted applications for jobs at Lowe's locations in Worcester, Massachusetts, and Danbury, Connecticut.  Antunes Aff. 4.  Those applications received quick responses and invitations to interview.  Id.  While Antunes was not ultimately offered either position—the Worcester manager said he interviewed Antunes without knowing someone else had been hired for the role, Antunes Aff. 4, and the record provides no insight into why Antunes was not offered the Danbury post—the difference in reaction to her application from hiring managers who knew of her complaint and those who did not is circumstantial evidence of causation.

That conclusion is further underscored by Antunes' experience interviewing with Lowe's New Haven location.  Her interview with the store manager concluded with him saying that he would be getting in touch with Jessica Kerpen.  Antunes Aff. at 5.  Antunes then did not hear anything back from the New Haven location, until she called the store and suddenly received an email from the store manager that a different candidate was selected.  Id.  Yet again, Kerpen was at the heart of a decision not to hire Antunes.

In arguing against the establishment of a prima facie case, Lowe's asserts that the eight-month gap between Antunes' complaint and their decision not to rehire her undermines any inference of a causal connection.  Def.'s Mem. at 7.  However, as Lowe's readily admits, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. . . ."  Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (quoting Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)).  Instead, the Second Circuit prefers a fact-specific judgment about "permissible inferences" that can be drawn from temporal proximity.  Id.  This has led to divergent conclusions about the amount of time that can elapse.  See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (comparing Hollander v. American Cynamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) (determining that there was insufficient evidence to infer a causal connection between the plaintiff's protected activity and the adverse action three months later) with Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980) (holding that an eight-month gap between protected activity and an adverse action was not too great to infer a causal connection)).  In the absence of a rule delineating a precise temporal boundary, "reasonably close temporal proximity and . . . particular context" can be enough to infer causation.  Summa, 708 F.3d at 128.  Given that the Second Circuit has explicitly recognized causal connection between events eight months apart—as well as the surrounding circumstances indicating knowledge of the complaint, displeasure regarding its filing by the person charged with making the adverse employment decision, and the disparate reactions to Antunes' applications—this court finds that

Antunes has met the "minimal" burden of establishing a prima facie case sufficient to move to step two of the McDonnell Douglas framework.

### 2. Legitimate, Non-Retaliatory Reasons for Not Rehiring Antunes

With the prima facie case made out, the second step of the McDonnell Douglas framework shifts the burden back to Lowe's to offer a legitimate, non-retaliatory reason for not rehiring Antunes.  As Lowe's argues and the undisputed facts indicate, this burden is easily satisfied.  Def.'s Mem. at 8.  In particular, Lowe's highlights that the resumé submitted by Antunes contained several errors, including that she was currently employed by USPS when she was not, that she had worked as a Merchandising Manager at Lowe's when she had not officially done so, and that she had received "two President's Club awards" while at Lowe's even though no such award exists.  See id. at 8–9; Pl.'s SOF ¶¶ 14–18; Def.'s SOF ¶¶ 14–18; see also Summa, 708 F.3d at 129 (noting that an applicant "overstat[ing] her qualifications, misrepresent[ing] her academic majors, and receiv[ing] 'a lackluster reference' all amount to legitimate, non-retaliatory reasons.").  Additionally, Lowe's notes that when Antunes initially resigned, she was still on final warning for telling an openly gay male coworker: "don't be such a girl."  See Def.'s Mem. at 9; Pl.'s SOF ¶ 5; Def.'s SOF ¶ 5.  Either of these reasons alone would likely be sufficient, and together they are more than enough for the presumption of retaliation to dissipate.

### 3. Pretextual Motive for Not Rehiring Antunes

The third step of the McDonnell Douglas framework shifts the burden back to Antunes to "show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the

11

evidence comprising the prima facie case, without more." Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 173 (2d Cir. 2006) (citation omitted).  Put differently, Antunes has the burden of "establishing that it is more likely than not the employer's decision was motivated, at least in part,[3] by an intent to retaliate against [her]."  El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Although Antunes does not dispute the facts underlying Lowe's legitimate, non-retaliatory reasons for not rehiring her, she does posit that their explanation shifted over time, and thus that the motive was pretextual.  Pl.'s Mem. at 13.  According to notes taken during an internal interview with Lowe's in June 2020, Kerpen noted that the "biggest factor" in the decision not to rehire Antunes was that she "was on a final notice."  Pl.'s Ex. 6, Lowe's Internal Interview Notes ("Interview Notes") at 2 (Doc. No. 44-9).  Citing that answer, Antunes argues that Kerpen recounted a markedly different story in Lowe's interrogatory answers in September 2021, and in Kerpen's deposition in January 2022, when she focused on elements of Antunes' resume that appeared to be "falsified."  Pl.'s Mem. at 13; Pl.'s Exhibit 5, Lowe's Objections, Answers, and Responses to Plaintiff's Interrogatories ("Lowe's Interrog. Answer") at 7 (Doc. No. 44-8); Kerpen Dep. at 15.  However, this argument appears to misrepresent the interrogatories

---

[3] In their reply, Lowe's argues that this court must use a but-for standard to evaluate a CFEPA retaliation claim.  See Def.'s Reply at 3; Univ. of Texas Southwestern Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").  However, it is axiomatic that Connecticut "is the final arbiter of its own laws."  Johnson v. Manson, 196 Conn. 309, 319 (1985), cert. denied, 474 U.S. 1063 (1986).  Moreover, appellate courts in Connecticut have continued to "apply the motivating factor test," even in the wake of the Nassar decision.  Wallace v. Caring Sols., LLC, 213 Conn. App. 605, 624 (2022).  Considering a recent decision that "the motivating factor test, and not the but-for test, remains the applicable standard for claims of discrimination under CFEPA, regardless of the federal precedent established in Gross and its progeny," id. at 626, this court will apply the motivating factor test here since Nassar is a key component of the relevant progeny.

and deposition transcript (or at least the portion of the transcript provided).  The relevant interrogatory question asks about the qualifications Antunes lacked for the job, and the answer says that she "lacked the basic qualifications for all positions to which she applied in 2020 because she falsified the contents of her resume. . . ."  Lowe's Interrog. Answer at 7.  Similarly, at the deposition, Kerpen emphasized the potential "mistake[s]" in response to questioning about what "jumped out at [her] when [she was] reviewing the application."  Kerpen Dep. at 15.  Clearly, Kerpen was answering a very different question than she was asked during her internal interview.  Far from suggesting that the final warning regarding Antunes' conduct was not relevant in the rehiring decision, Kerpen merely addresses—as she was instructed to do—what qualifications Antunes lacked and what jumped out at her from Antunes' application materials.  Accordingly, the court finds there is no evidence in the record to suggest that Lowe's story shifted over time.

Instead, to meet her burden at step three, Antunes must rely on the strength of the evidence that established a causal connection of retaliation in step one.  While mere "temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext", El Sayed, 627 F.3d at 933, here, Antunes puts more evidence forward.  That Kerpen—the person who made the decision not to rehire Antunes at nine different Lowe's locations—knew of the complaint; that Kerpen told Antunes she was not a "team player" or "one of us" due to reporting Cole for sexual harassment; and that there was a very different reaction to Antunes' application by hiring managers that lacked knowledge of the complaint all amounts to circumstantial evidence that Lowe's decision was at least partially motivated by a desire to retaliate.  Given the obligation to

draw all inferences in favor of the non-moving party at this stage, the court determines that Antunes has put forward some evidence of pretext such that a rational jury could find that Lowe's actions were motivated, at least in part, by retaliatory animus. Accordingly, Lowe's Motion for Summary Judgment is denied with respect to the retaliation claim.

      B.     <u>Counts Three and Four: Negligent Supervision and Retention</u>

      In arguing for summary judgment on Counts Three and Four, Lowe's asserts that Antunes' negligent supervision and retention claims fail because they are based on alleged harassment rather than tortious conduct.  Def.'s Mem. at 11–12.  In opposition, Antunes counters that this issue is not settled in Connecticut law.  Pl.'s Mem. at 16.

      Connecticut law recognizes that "an employer may[ be] held liable for the negligent supervision of employees.  <u>Brooks v. Sweeney</u>, 299 Conn. 196, 207 n.12 (2010) (citation omitted).  "To state a claim for negligent supervision, a plaintiff must plead and prove that he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise."  <u>Abate v. Circuit-Wise, Inc.</u>, 130 F. Supp. 2d 341, 344 (D. Conn. 2001).  Crucially, a claim of negligent supervision "must allege injury in tort."  <u>Deguzman v. Kramer</u>, 2005 WL 2030447, at *2 (D. Conn. Aug. 23, 2005); <u>Quinn v. Gould</u>, 2020 WL 1234553, at *9 (D. Conn. Mar. 13, 2020). "Violations of Title VII, the ADEA, and CFEPA are insufficient bases" for satisfying the "injury prong of a negligent supervision claim."  <u>Michalsky v. Moffly Publ'n, Inc.</u>, 2020 WL 5537003, at *6 (Conn. Super. Ct. Aug. 13, 2020); <u>Canty v. Rudy's Limousine</u>, 2005 WL 2297410, at *6 (D. Conn. Sept. 15, 2005) (holding that where the plaintiff "alleged no injury other than violations of Title VII, the ADEA, and CFEPA", these "violations are insufficient bases for a negligent supervision complaint").

Antunes is clear that the negligent supervision claim arises out of Lowe's alleged failure to prevent Cole from sexually harassing plaintiff and her colleagues.  Pl.'s Mem. at 14 ("Defendant failed to properly supervise Cole and Defendant knew or should have known that the failure to properly supervise Cole would likely lead to sexual harassment and/or the continuation of the sexual harassment.").  While the caselaw is clear that a plaintiff is "not proscribed from bringing both [a workplace harassment] and common law [tort] claim", Deguzman, 2005 WL 2030447, at *2, there is no assertion in the case at bar that Lowe's alleged negligent supervision of Cole subjected Antunes to emotional distress or any other tort.  Indeed, Antunes' sole claim of intentional infliction of emotional distress—a claim clearly sounding in tort—was dismissed by this court.  See R. on Def.'s Mot. to Dismiss at 12.

Rather than dispute the alleged injury involved, Antunes counters that the requirement of an injury sounding in tort is not a matter of settled law.  Pl.'s Mem. at 16.  In support of this position, Antunes cites to three cases, all of which belie her position.  First, there is Michalsky v. Moffly Publ'n, Inc., 2020 WL 5537003 (Conn. Super. Ct. Aug. 13, 2020).  In Michalsky, the court decided against striking the plaintiff's negligent supervision claim based on a determination that "[t]he plaintiff has alleged injuries in support of his negligent and reckless supervision claims beyond having been subjected to unlawful discrimination under CFEPA."  Id. at *6.  Thus, the Michalsky court clearly adopted the view that Antunes posits is unsettled.  Next, there is Oliver v. Walmart Stores East, L.P., 2017 WL 951200 (Conn. Super. Ct. Feb. 13, 2017).  There, the court found that the negligent supervision claim was not barred because the plaintiff alleged a cause of action sounding in "intentional infliction of emotional distress."  Id. at *3 n.1.

15

Again, instead of proving Antunes' point, this case betrays it by rooting the viability of the claim in an injury in tort.[4]  Lastly, Antunes points to <u>Madey v. Stanley Black & Decker, Inc.</u>, 2021 WL 3727809 (Conn. Super. Ct. July 29, 2021).  The court's decision in <u>Madey</u> not to strike the negligent supervision claim is tied to the fact that the plaintiff asserted an emotional distress injury.  <u>See id.</u> at *4–5.  Indeed, the <u>Madey</u> court explicitly acknowledges that "a negligent supervision cause of action arises out of an employer's duty to stop its employees from committing torts against other employees." <u>Id.</u> at *5.

While negligent supervision and negligent retention are distinct causes of action, both impose "liability on an employer for the foreseeable tortious acts of an employee." <u>Blandon v. Teamsters Local Union No. 443</u>, 2011 WL 4915197, at *14 (D. Conn. Oct. 17, 2011) (citation and quotation omitted).  Accordingly, the same failure to plead an injury in tort that dooms the negligent supervision claim also dooms the negligent retention claim.  As such, by alleging only injury rooted in a violation of CFEPA and not in tort, these claims fail as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Lowe's Motion for Summary Judgment is denied with respect to Count One and granted with respect to Counts Three and Four.

---

[4] It is worth noting that the viability of the claim in <u>Oliver</u> is limited, as the negligent supervision count was struck for failing "to include facts sufficient to support a finding of foreseeability. . . ." <u>Id.</u> at *4.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of January 2023.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge